Howell, Judge,
delivered the opinion of the Court:
Plaintiff Francis John McVane is a former enlisted man of the United Sates Naval Reserve. During the period April 10, 1945, to April 5, 1946, plaintiff served on active duty with the rates of Specialist (Shore Patrol), first class, and Specialist (Shore Patrol), second class, under the jurisdiction of the Senior Shore Patrol Officer, United States Navy Shore Patrol, Naval Training Base, Pensacola, Florida. The Pensacola Senior Shore Patrol Officer exercised jurisdiction, for shore patrol purposes, over an area centering at Pensacola and bounded by an arc running roughly from the Gulf of Mexico through Mobile, Alabama; Montgomery, Alabama; Panama City, Florida; and back to the Gulf. During the 361-day period in question, plaintiff was assigned, to shore patrol duty in the cities of Pensacola, Florida (lOd days); Flomaton, Alabama (12 days) ; and Milton, Florida. (215 days)[1]; each of these cities being within the jurisdiction of the Pensacola Senior Shore Patrol Officer.
No Navy facilities existed in Milton or in Flomaton, but ample Naval accommodations for enlisted men were available in Pensacola and at Whiting Field, Florida, a Naval Auxiliary Air Station about eight miles from Milton and between 15 and 20 miles from Flomaton. Travel by motor vehicle from Milton to Whiting required about 15 minutes; the distance from Flomaton to Whiting could be traveled in less than half an hour.
Shore patrol personnel, because their duties required irregular hours and absence from the base at meal times, were given subsistence allowance in lieu of actual meals. This was in accord with the Act of June 16, 1942 (Pay Readjust-, ment Act of 1942), 56 Stat. 363, Executive Order 9386, and Navy Bureau of Personnel Manual Articles D-10101 and D-10102, and conforms to the decision of this Court in Peterson v. United States, 82 C. Cls. 214. Plaintiff drew this allowance during the pertinent period as did all other shore patrolmen similarly assigned.
*506 Tbe Act of June 16, 1942, supra, Sec. 10, provided that:
To each enlisted man not furnished quarters or rations in kind, there shall be granted, under such regulations as the President may prescribe, an allowance for quarters and subsistence, the value of which shall depend on the conditions under which the duty of the man is being performed, and shall not exceed $5 per day.
* * * * *
Each enlisted man of the first, second, or third grade, in the active military, naval, or Coast Guard Service of the United States having a dependent as defined in section 4 of this Act, shall, under such regulations as the President may prescribe, be entitled to receive, for any period during which public quarters are not provided and available for his dependent,.the monthly allowance for quarters authorized by law to be granted to each enlisted man not furnished quarters in kind: Provided, That such enlisted man shall continue to be entitled to this allowance although receiving the allowance provided in the first paragraph of this section if by reason of orders of competent authority his dependent is prevented from dwelling with him.
The Act of June 16,1942, was supplemented by Executive Order 9386, promulgated October 15, 1943, which set up tables of allowances for men serving in different areas, and was further supplemented by Articles D-10101 and D-10102, Bureau of Personnel Manual (1942) which incorporated the legislation and executive order into Navy practice. By letters dated November 2, 1943, and October 9, 1944, certain fleet officers, including plaintiff’s commanding officer,[2] were delegated authority by the Chief of Naval Personnel to authorize subsistence and quarters allowances in the interest of the service and were advised of the restraints to be observed in the exercise of that authority; namely, that authorization should be for the benefit of the Navy and not of the individual and that subsistence and quarters allowances were not to be authorized when government mess and quarters were available unless their utilization would be wasteful and inexpedient.
■ Most of the shore patrol stationed with plaintiff at Milton, Florida, were married men. It is apparent from the second *507 quoted excerpt from Sec. 10, Act of June 16, 1942, supra, that if these married men held ratings of second class, first class, or chief petty officer (ratings of the third, second and first pay grades, respectively) they would be entitled to draw quarters allowance whether or not they occupied government quarters so long as their wives (or other dependent) did not also occupy government quarters. It is not entirely clear whether or not all the married men stationed at Milton held ratings within the upper three pay grades, but in the light of testimony offered by both plaintiff and defendant to the •effect that Navy [Regulations provided that married men living ashore with their families should receive quarters allowances, it is entirely reasonable to conclude that such was the case. Navy Regulations could not, without authorizing legislation, have provided that all married men living ashore he paid quarters allowance regardless of the availability of government quarters. The controlling military pay and allowance statute of the period, the Act of June 16, 1942, quoted in pertinent part above, authorized such payments only to men of the upper three pay grades. It is reasonable to infer that if, as witnesses for both plaintiff and defendant testified, all the married men at Milton were drawing quarters allowances pursuant to Navy Regulations because they were married rather than because government accommodations were not available, they must have been within the top three pay grades. With this in mind, it is clear that the granting of permission to the married enlisted men to live off the base and in the town where assigned to duty cost the ■Government nothing and was of some advantage to it in that the men were closer to their duty posts and therefore more readily available in case of emergency.
McVane’s situation was different in that, although holding a rating within the upper three pay grades, he was without dependents and could qualify for quarters allowance only if his commanding officer should determine that no adequate government facilities were available or that, if available, their utilization would be wasteful or inexpedient. Plaintiff’s commanding officer refused to make such a determination, indicating that quarters were available, but granted plaintiff permission to reside off the base, at his own expense, *508 if be so ebose. Tbis was, essentially, the same treatment accorded the married men at Milton, who could have been required to live on the base, but were given the privilege of living ashore with their families where no added cost to the-Government was incurred.
McVane’s repeated requests for quarters allowance were met with the reply that no allowance could be made as government quarters were available to him. Plaintiff contends-that they may have been available, but that he, like the-plaintiffs in the Lake and Lv/ndblad cases,[3] was never assigned to them and could not have known that they were available or that he was intended to occupy them. Without passing upon the legal questions involved in the proposed application of the interpretation of the 1924 Act applying-in those cases to the instant case which arises under different legislation, it is sufficient to note that those cases are not factually analogous to the instant case. In the Lahe and Limdblad cases the officers involved were not assigned quarters for one reason or another, and the plaintiffs there had m> way of knowing whether quarters were actually available or whether the omission of assignment to quarters was intentional. Here, plaintiff was personally advised that quarters were available. He was given the choice between occupying government quarters or continuing to live ashore at his own expense. It would not seem necessary to require-plaintiff’s commanding officer, under these circumstances, to have delivered written orders assigning plaintiff to a specifie barracks. Clearly, plaintiff did not desire such an order;for it would have required compliance and would have been-inconsistent with the permission granted to maintain a residence ashore. Although plaintiff requested quarters allowance, it does not appear that he ever requested assignment to government quarters.
Nor does it appear that plaintiff more than casually investigated the possibility of transportation between Navy barracks and duty stations. Considering the 100 days served at Pensacola, there is no question but that naval lodgings-, were available in the immediate area. Out of 215 days spent *509 at Milton, only 81 duty days required plaintiff’s presence in town beyond the scheduled closing of public transportation tq Whiting Field, for which tickets or passes were furnished: plaintiff without cost. On those 81 nights naval vehicles were available to return men coming off duty to camp, but when no one requested this available transportation, the vehicles did not make the trip without reason. Plaintiff' gave no testimony regarding hours of duty during his 12' days at Flomaton, but the evidence indicates the conditions-of that tour of duty to have been like that at Milton.
Government quarters were not only available to plaintiff’ during the period from April 10, 1945, to April 5, 1946,. but they were reasonably accessible and were furnished him-within the meaning of Section 10 of the Act of June 16,1942:. An enlisted man does not have to be forced to occupy public-quarters in order for them to be furnished; nor does the-Government have to run a passengerless vehicle in order to> furnish transportation. In this case the law was complied1: with when reasonably accessible quarters were made available to McVane and he was made fully aware that they were-available and open to his immediate occupancy. The law-does not require the Government to compensate plaintiff for-expenses incurred in maintaining quarters ashore for his-own convenience. Cf. Pedersen v. United States, 115 C. Cls. 335.
Plaintiff’s petition will, therefore, be dismissed.
It is so ordered.
MaddsN, Judge; Whitakee, Judge; Littuetost, Judge;- and JoNes, Chief Judge, concur.

 Thirty-four days leave accounts for the balance of the period.

 Chief of Intermediate Training Command, Pensacola, Florida.

 Lake v. United States, 97 C. Cls. 447; Lunddlad v. United States, 98 C. Cls. 397.